IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SABRINA HOUDESHELL<br>536 East 4th Street<br>Greenville, Ohio 45331 | )<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| COUNCIL ON RURAL SERVICE<br>PROGRAMS, INC.<br>1170 Sweitzer Street<br>Greenville, Ohio 45331 | )<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve Also:**<br>Council on Rural Service Programs, Inc.<br>c/o Daniel P. Schwanitz (Stat. Agent)<br>201 Robert M. Davis Parkway<br>Piqua, Ohio 45356 | )<br>)<br>)<br>)<br>)<br>) | |
| -and- | ) | |
| DANIEL SCHWANITZ<br>6604 5 K Avenue<br>Greenville, OH 45331 | )<br>)<br>) | |
| **Serve Also:**<br>Daniel P. Schwanitz<br>c/o Council on Rural Service Programs, Inc.<br>201 Robert M. Davis Parkway<br>Piqua, Ohio 45356 | )<br>)<br>)<br>)<br>)<br>) | |
| -and- | ) | |
| KARIN SOMERS<br>519 E High St<br>Portland, IN 47371 | )<br>)<br>) | |

|  |  |
|---|---|
| **Serve Also:** | ) |
| Karin Somers | ) |
| c/o Council on Rural Service | ) |
| Programs, Inc. | ) |
| 201 Robert M. Davis Parkway | ) |
| Piqua, Ohio 45356 | ) |
|  | ) |
| -and- | ) |
|  | ) |
| MILDRED WORYK | ) |
| 1880 Thornwood Ct. | ) |
| Troy, OH 45373 | ) |
|  | ) |
| **Serve Also:** | ) |
| Mildred Woryk | ) |
| c/o Council on Rural Service | ) |
| Programs, Inc. | ) |
| 201 Robert M. Davis Parkway | ) |
| Piqua, Ohio 45356 | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

Plaintiff, Sabrina Houdeshell, by and through undersigned counsel, states and avers the following for the Complaint against the Defendants:

## PARTIES AND VENUE

1. Houdeshell is a resident of the City of Greenville, County of Darke, State of Ohio.

2. At all times herein, Houdeshell was acting in the course and scope of her employment.

3. Council on Rural Service Programs, Inc. ("CORS") is a domestic corporation not for profit with its principal place of business located at 201 Robert M Davis Parkway, Piqua, Ohio 45356.

4. Daniel Schwanitz is a resident of Ohio.

5. At all times herein, Schwanitz was acting in the course and scope of his employment.

6. Schwanitz was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at CORS who acted directly or indirectly in the interest of CORS.

2

7. Schwanitz was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

8. Karin Somers is a resident of Indiana.

9. At all times herein, Somers was acting in the course and scope of her employment.

10. Somers was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at CORS who acted directly or indirectly in the interest of CORS.

11. Somers was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

12. Mildred Woryk is a resident of Ohio.

13. At all times herein, Woryk was acting in the course and scope of her employment.

14. Woryk was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at CORS who acted directly or indirectly in the interest of CORS.

15. Woryk was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

16. All of the material events alleged in this Complaint occurred in Darke County, Ohio.

17. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Houdeshell is alleging a Federal Law Claim under The Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.* and the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq*.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

19. Within 300 days of the conduct alleged below, Houdeshell dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Ohio Civil Rights Commission ("OCRC"), Charge No. 473-2023-01552 against Defendants. ("Houdeshell EEOC Charge").

20. On or about July 11, 2023, the EEOC issued a Notice of Right to Sue letter to Houdeshell regarding the Houdeshell EEOC Charge.

21. Houdeshell received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

22. Houdeshell has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

23. Houdeshell has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

24. Houdeshell is a former employee of CORS.

25. Houdeshell was hired by CORS on or about January 21, 2014.

26. Houdeshell was employed by CORS in the position of School Bus Driver.

27. During her employment, Houdeshell had the most years of service of all of CORS' School Bus Drivers.

28. CORS was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

29. At all times relevant herein, Houdeshell was employed by CORS for at least 12 months and had at least 1,250 hours of service with CORS and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

30. Houdeshell's mother, Cynthia Johnson, suffers from Chronic Obstructive Pulmonary Disease, diabetes, fibromyalgia, neuropathy, multiple strokes, COPD, emphysema, lacerated

4

kidney, aortic value replacement, kidney removal, and retinal disease. ("Johnson's Serious Health Conditions").

31. Each of Johnson's Serious Health Conditions are Serious Health Conditions within the meaning of the FMLA.

32. As a result of Johnson's Serious Health Conditions, Johnson was hospitalized several times beginning in September 2021.

33. As a result of Johnson's Serious Health Conditions, Johnson received continuing treatment from 13 different medical professionals.

34. As a result of Johnson's Serious Health Conditions, Johnson was required to make frequent hospital visits for treatment over the course of Houdeshell's employment at CORS.

35. As a result of Johnson's Serious Health Conditions, Johnson could not drive.

36. As a result of Johnson's Serious Health Conditions, Johnson needed Houdeshell to drive her to her doctor's appointments and hospital stays.

37. As a result of Johnson's Serious Health Conditions, Cynthia Johnson is disabled.

38. As a result of Johnson's Serious Health Conditions, CORS perceived Cynthia Johnson as disabled.

39. As a result of Johnson's Serious Health Conditions, Houdeshell is in a protected class by association for disability.

40. Defendants had notice of Houdeshell's protected disability class during her employment.

41. Houdeshell's daughter was diagnosed with a tracheal tumor. ("Houdeshell's Daughter's Serious Health Condition").

42. A tracheal tumor is a Serious Health Condition.

43. As a result of Houdeshell's Daughter's Serious Health Condition, Houdeshell's daughter required continuing medical treatment.

44. As a result of Houdeshell's Daughter's Serious Health Condition, Houdeshell's daughter required frequent surgical procedures.

45. As a result of Houdeshell's Daughter's Serious Health Condition, Houdeshell's daughter was required to attend frequent appointments with her medical providers.

46. As a result, Houdeshell's daughter needed Houdeshell to drive her to her doctor's appointments.

47. As a result, Houdeshell's daughter needed Houdeshell to drive her to her surgeries.

48. As a result of Houdeshell's Daughter's Serious Health Condition, Houdeshell's Daughter is disabled.

49. As a result of Houdeshell's Daughter's Serious Health Condition, CORS perceived Houdeshell's Daughter as disabled.

50. As a result of Houdeshell's Daughter's Serious Health Condition, Houdeshell is in a protected class by association for disability.

51. Defendants had notice of Houdeshell's protected disability class during her employment.

52. Despite Houdeshell's Daughter's Serious Health Condition, Houdeshell could still perform the essential functions of her job, with or without a reasonable accommodation.

53. On or about December 20, 2021, Houdeshell requested intermittent FMLA leave to care for Johnson's Serious Health Conditions.

54. On or about December 20, 2021, Houdeshell requested intermittent FMLA leave to care for Houdeshell's Daughter's Serious Health Condition.

55. Paragraphs 56 and 57 will be referred to collectively as the "First FMLA Request."

56. The First FMLA Request allowed Houdeshell to miss work 3-to-6 times each month to accompany her mother and/or daughter to their medical appointments.

57. On or about January 17, 2022, CORS approved Houdeshell's First FMLA Request.

58. On or about February 1, 2023, Houdeshell submitted a request to renew her approved FMLA leave for another 12-month period. ("Second FMLA Request").

59. Houdeshell submitted the Second FMLA Request to care for Johnson's Serious Health Conditions.

60. Houdeshell submitted the Second FMLA Request to care for Houdeshell's Daughter's Serious Health Conditions.

61. The Second FMLA Request allowed Houdeshell to miss work 3 to 6 times each month to accompany her mother and/or daughter to their medical appointments.

62. CORS approved the Second FMLA Request.

63. In or about March 2023, CORS informed Houdeshell that it was eliminating her position.

64. On or about March 7, 2023, CORS informed Houdeshell that her employment with CORS would terminate at the end of the 2023 school year. ("Notice of Termination").

65. The Notice of Termination was an adverse action.

66. The Notice of Termination was an adverse employment action.

67. The Notice of Termination was retaliation for the First FMLA Request.

68. The Notice of Termination was retaliation for the Second FMLA Request.

69. The Notice of Termination constitutes retaliation.

70. Defendants willfully engaged in the Notice of Termination.

71. Defendants intentionally engaged in the Notice of Termination.

72. Defendants engaged in the Notice of Termination with the intent to make Houdeshell quit.

7

73. After receiving the Notice of Termination, Houdeshell complained to her supervisors Angie Coby and Kasey Short that Defendant's Notice of Termination was due to her FMLA. ("Complaint of FMLA Retaliation").

74. Houdeshell's Complaint of FMLA Retaliation was a protected action.

75. In response to Houdeshell's Complaint of FMLA Retaliation, Defendants failed to take prompt investigatory action.

76. In response to Houdeshell's Complaint of FMLA Retaliation, Defendants failed to take prompt remedial action.

77. After receiving the Notice of Termination, Houdeshell complained to her supervisors Coby and Short that she felt Defendants were discriminating against her due to family members disabilities. ("Complaint of Disability Discrimination").

78. Houdeshell's Complaint of Disability Discrimination was a protected action.

79. In response to Houdeshell's Complaint of Disability Discrimination, Defendants failed to take prompt investigatory action.

80. In response to Houdeshell's Complaint of Disability Discrimination, Defendants failed to take prompt remedial action.

81. On or about April 11, 2023, CORS circulated an advertisement soliciting applications for School Bus Driver positions within the company. ("Job Replacement Posting").

82. By circulating the Job Replacement Posting, CORS intended to find a School Bus Driver to replace Houdeshell.

83. In the Job Replacement Posting, CORS specified that it was seeking candidates who could provide "uninterrupted and quality" service to CORS and its clientele.

84. The Job Replacement Posting was retaliation for the First FMLA Request.

85. The Job Replacement Posting was retaliation for the Second FMLA Request.

86. The Job Placement Posting was disability by association discrimination.

87. The Job Replacement Posting constitutes retaliation.

88. Defendants willfully engaged in the Job Replacement Posting.

89. Defendants intentionally engaged in the Job Replacement Posting.

90. The Job Replacement Posting was an adverse action.

91. The Job Replacement Posting was an adverse employment action.

92. Defendants engaged in the Job Replacement Posting with the intent to make Houdeshell quit.

93. On or about May 7, 2023, CORS, via Chief HR & Administration Officer Mildred Woryk, informed Houdeshell in writing that it was terminating her employment, effective May 26, 2023. ("Termination").

94. On or about May 11, 2023, Houdeshell filed an EEOC Charge against CORS citing disability discrimination and retaliation.

95. Houdeshell's act of filing an EEOC Charge was a protected action.

96. On or about May 26, 2023, Defendants formally terminated Houdeshell's employment.

97. The Termination was an adverse action.

98. The Termination was an adverse employment action.

99. Defendants' termination of Houdeshell's employment was retaliation for the First FMLA Request.

100. Defendants' termination of Houdeshell's employment was retaliation for the Second FMLA Request.

101. Defendants terminated Houdeshell's employment because Houdeshell requested FMLA leave during her employment.

102. Defendants terminated Houdeshell's employment because Houdeshell utilized FMLA leave during her employment.

103. Defendants terminated Houdeshell's employment because of her close associates' Disabilities.

104. The Termination constitutes retaliation.

105. Defendants terminated Houdeshell's employment in retaliation against her act of filing an EEOC Charge.

106. Defendants knowingly terminated Houdeshell's employment.

107. Defendants knowingly took an adverse employment actions against Houdeshell.

108. Defendants knowingly took an adverse actions against Houdeshell.

109. Defendants intentionally terminated Houdeshell's employment.

110. Defendants intentionally took an adverse employment actions against Houdeshell.

111. Defendants intentionally took an adverse actions against Houdeshell.

112. Defendants knew that terminating Houdeshell's employment would cause Houdeshell harm, including economic harm.

113. Defendants willfully terminated Houdeshell's employment.

114. Defendants' purported reason for Houdeshell's Termination is pretext for disability discrimination.

115. Defendants' purported reason for Houdeshell's Termination is pretext for unlawful retaliation against her usage of FMLA leave.

116. Defendants' purported reason for Houdeshell's Termination is pretext for unlawful interference with her continued use of FMLA leave.

117. Defendants' purported reason for Houdeshell's Termination is pretext for retaliation against Houdeshell's reporting of disability discrimination.

118. Defendants' purported reason for Houdeshell's Termination is pretext for retaliation against Houdeshell's reporting of FMLA retaliation.

119. Defendants' purported reason for Houdeshell's Termination is pretext for retaliation against Houdeshell's request for continued FMLA leave.

120. Defendants' purported reason for Houdeshell's Termination is pretext for retaliation against Houdeshell's filing of an EEOC Charge.

121. Defendants did not proffer a legitimate non-discriminatory reason for terminating Houdeshell.

122. CORS has a progressive disciplinary policy. ("Discipline Policy").

123. A verbal warning is the lowest level of discipline in the Discipline Policy.

124. Houdeshell did not receive a verbal warning before the Termination.

125. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

126. Houdeshell did not receive a written warning before the Termination.

127. A termination is the highest level of discipline in the Discipline Policy.

128. Defendants knowingly skipped progressive disciplinary steps in terminating Houdeshell.

129. Defendants knowingly terminated Houdeshell's employment.

130. Defendants knowingly took an adverse employment action against Houdeshell.

131. Defendants knowingly took an adverse action against Houdeshell.

132. Defendants intentionally skipped progressive disciplinary steps in terminating Houdeshell.

133. Defendants intentionally terminated Houdeshell's employment.

134. Defendants intentionally took an adverse employment action against Houdeshell.

135. Defendants intentionally took an adverse action against Houdeshell.

136. Defendants knew that skipping progressive disciplinary steps in terminating Houdeshell would cause Houdeshell harm, including economic harm.

137. Defendants knew that terminating Houdeshell would cause Houdeshell harm, including economic harm.

138. Defendants willfully skipped progressive disciplinary steps in terminating Houdeshell.

139. There was a causal connection between Houdeshell's First FMLA Request and the Termination.

140. There was a causal connection between Houdeshell's Second FMLA Request and the Termination.

141. There was a causal connection between Houdeshell's close associates' disabilities and the Termination.

142. There was a causal connection between Houdeshell's Complaint of FMLA Retaliation and the Termination.

143. There was a causal connection between Houdeshell's requested FMLA and the Termination.

144. There was a causal connection between Houdeshell's EEOC Charge and the Termination.

145. There was a causal connection between Houdeshell's Complaint of Disability Discrimination and the Termination.

146. As a result of Defendants' unlawful acts, Houdeshell has suffered, and will continue to suffer, pecuniary harm.

147. As a result of Defendants' unlawful acts, Houdeshell has suffered, and will continue to suffer, emotional distress.

## COUNT I: RETALIATION IN VIOLATION OF FMLA

148. Houdeshell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

149. During her employment, Houdeshell utilized FMLA leave.

150. After Houdeshell utilized her qualified FMLA leave, Defendants retaliated against her.

151. Defendants retaliated against Houdeshell by terminating her employment.

152. Defendants willfully retaliated against Houdeshell in violation of 29 U.S.C. § 2615(a).

153. As a direct and proximate result of Defendants' wrongful conduct, Houdeshell is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT II: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

154. Houdeshell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

155. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

156. Defendant is a covered employer under FMLA.

157. During her employment, Houdeshell qualified for FMLA leave.

158. During her employment, Houdeshell requested FMLA leave by asking Defendant for medical leave based on her new medication and treatment.

159. Defendant unlawfully interfered with Houdeshell's exercise of her rights under FMLA in violation of Section 105 of FMLA and section 825.220 of FMLA regulations.

160. Defendant violated section 825.300(c)(1) of FMLA and interfered with Houdeshell's FMLA rights when Defendant did not provide Houdeshell with FMLA leave.

161. As a direct and proximate result of Defendant's conduct, Houdeshell is entitled to all damages provided for in 29 U.S.C. § 2617.

**COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA**

162. Houdeshell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

163. Houdeshell is in the protected class due to her close associates' (mother's and daughter's) Serious Health Conditions and disabling conditions.

164. Defendants treated Houdeshell differently than other similarly-situated employees based on her associates' disabling conditions.

165. Defendants treated Houdeshell differently than other similarly-situated employees based on her associates' perceived disabling condition.

166. On or about May 26, 2023, Defendants terminated Houdeshell's employment without just cause.

167. Defendants terminated Houdeshell's employment based on her close associates' (her mother's and daughter's) disabilities.

168. Defendants terminated Houdeshell's employment based on her associates' perceived disabilities.

169. Defendants violated the ADA when they discharged Houdeshell based on her associates' disabilities.

170. Defendants violated the ADA when they discharged Houdeshell based on her perceived associates' disabilities.

171. Defendants violated the ADA by discriminating against Houdeshell based on her disabling condition.

172. Defendants violated the ADA by discriminating against Houdeshell based on her associates' perceived disabling conditions.

173. As a direct and proximate result of Defendants' conduct, Houdeshell suffered and will continue to suffer damages.

### COUNT IV: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

174. Houdeshell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

175. Houdeshell is in the protected class due to her close associates' (mother's and daughter's) Serious Health Conditions and disabling conditions.

176. Defendants treated Houdeshell differently than other similarly-situated employees based on her associates' disabling conditions.

177. Defendants treated Houdeshell differently than other similarly-situated employees based on her associates' perceived disabling condition.

178. On or about May 26, 2023, Defendants terminated Houdeshell's employment without just cause.

179. Defendants terminated Houdeshell's employment based on her close associates' (her mother's and daughter's) disabilities.

180. Defendants terminated Houdeshell's employment based on her associates' perceived disabilities.

181. Defendants violated R.C. 4112.02 et seq. when they discharged Houdeshell based on her associates' disabilities.

182. Defendants violated R.C. 4112.02 et seq. when they discharged Houdeshell based on her perceived associates' disabilities.

183. Defendants violated R.C. 4112.02 et seq. by discriminating against Houdeshell based on her disabling condition.

184. Defendants violated R.C. 4112.02 et seq. by discriminating against Houdeshell based on her associates' perceived disabling conditions.

185. As a direct and proximate result of Defendants' conduct, Houdeshell suffered and will continue to suffer damages.

## COUNT V: RETALIATION IN VIOLATION OF THE ADA

186. Houdeshell restates each and every prior paragraph of this complaint, as if it were fully restated herein.

187. As a result of Defendants' discriminatory conduct described above, Houdeshell complained about the disability discrimination that she was experiencing.

188. Subsequent to Houdeshell's reporting of disability discrimination to Defendants, Defendants retaliated against Houdeshell by, among other things, terminating Houdeshell's employment.

189. Defendants' actions were retaliatory in nature based on Houdeshell's opposition to the unlawful discriminatory conduct.

190. Pursuant to the ADA, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

191. As a direct and proximate result of Defendants' conduct, Houdeshell suffered and will continue to suffer damages.

## COUNT VI: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

192. Houdeshell restates each and every prior paragraph of this complaint, as if it were fully restated herein.

193. As a result of Defendants' discriminatory conduct described above, Houdeshell complained about the disability discrimination that she was experiencing.

194. Subsequent to Houdeshell's reporting of disability discrimination to Defendants, Defendants retaliated against Houdeshell by, among other things, terminating Houdeshell's employment.

195. Defendants' actions were retaliatory in nature based on Houdeshell's opposition to the unlawful discriminatory conduct.

196. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

197. As a direct and proximate result of Defendants' conduct, Houdeshell suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Sabrina Houdeshell demands from Defendants the following:

(a) Issue a permanent injunction:

   (i) Requiring CORS to abolish discrimination, harassment, and retaliation;

   (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

   (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

(v)    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring CORS to restore Houdeshell to one of the positions to which Houdeshell was entitled by virtue of Houdeshell's application and qualifications, and expunge Houdeshell's personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Houdeshell for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Houdeshell claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Evan R. McFarland*
Evan R. McFarland (0096953)
Trisha Breedlove (0095852)
    Trial Attorney
**SPITZ, THE EMPLOYEE'S LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: evan.mcfarland@spitzlawfirm.com

*Attorney for Plaintiff Sabrina Houdeshell*

## **JURY DEMAND**

Plaintiff Sabrina Houdeshell demands a trial by jury by the maximum number of jurors permitted.

                                                */s/ Evan R. McFarland*
                                                Evan R. McFarland (0096953)
                                                **SPITZ, The Employee's Law Firm**