**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| SABRINA HOUDESHELL, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:23-cv-281 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| COUNCIL ON RURAL SERVICE | : | |
| PROGRAMS, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 18)[1]**

---

Presently before the Court is Defendants' Motion for Summary Judgment ("Motion") (Doc. No. 18). In their Motion, Defendants, Council on Rural Service Programs, Inc. ("CORS"), Daniel Schwanitz, Karin Somers, and Mildred Woryk (collectively, "Defendants") seek summary judgment on Plaintiff Sabrina Houdeshell's ("Houdeshell") six claims of employment discrimination and retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"), the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), and Chapter 4112 of the Ohio Revised Code. (*Id.*) Houdeshell claims Defendants terminated her employment, in violation of these statutes, because she had taken and requested FMLA leave and because of her association with individuals with disabilities. (Doc. No. 1) Defendants argue Houdeshell is unable to meet her burden of proof on each of her six claims; Defendants have met their burden of providing a legitimate, non-discriminatory, non-retaliatory reason for terminating Houdeshell's

---

[1] The Court expresses its deepest gratitude to its judicial extern, Marissa Reagle, for her exemplary work and invaluable contributions to this Order.

position; and, Houdeshell is unable to show Defendants' reason is pretextual. (Doc. No. 18) For the reasons discussed below, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. No. 18).

## I.    <u>BACKGROUND</u>

This case arises out of the termination of Houdeshell's position as a driver for CORS. CORS is an Ohio not-for-profit corporation which provides education and support services to children in nine Ohio counties. (Doc. No. 18 at PageID 112.) Defendant Daniel Schwanitz is CORS' chief executive officer. (*Id.* at PageID 113.) Defendant Mildred Woryk is CORS' chief human resource and administration officer. (*Id.*) Defendant Karin Somers is CORS' early childhood director. (*Id.*)

Houdeshell began working for CORS in January of 2014 as a bus driver. (Doc. No. 26 at PageID 399.) In this position, Houdeshell drove a CORS school bus to transport children primarily to and from CORS' Greenville location. (*Id.* at PageID 400-01.) In addition to driving the school bus, throughout her typical workday, Houdeshell completed other tasks around CORS' Greenville location, such as helping in the kitchen and monitoring classrooms while teachers took breaks. (Doc. No. 26 at PageID 423-27.) During her time at CORS, Houdeshell submitted two notices for time off under FMLA to care for her mother and her daughter. (*Id.* at PageID 434.) CORS granted each of Houdeshell's requests for FMLA leave. (*Id.* at PageID 436.) CORS granted Houdeshell's most recent request on February 13, 2023. (Doc. No. 27-1 at PageID 571.)

In late 2022, CORS began discussing a reduction in force. (Doc. No. 18 at PageID 114-15.) CORS receives the majority of its funding through the Office of Head Start within the U.S. Department of Health and Human Services ("OHS"). (Doc. No. 18 at PageID 112.) On September 12, 2022, OHS issued an Information Memorandum to CORS ("Memorandum") which stated,

"OHS strongly encourages Head Start grant recipients to permanently increase compensation, which is the most effective strategy in retaining and recruiting qualified staff." (Doc. No. 18 at PageID 114.) Upon receiving the Memorandum, CORS leadership met to determine ways the organization could permanently increase staff compensation. (*Id.* at PageID 114-15.) CORS leadership determined implementing a reduction in force was the best way to permanently increase compensation. (*Id.* at PageID 115.)

On October 24, 2022, CORS informed its employees that it intended to reduce staffing levels. (Doc. No. 18 at PageID 115; Doc. No. 26 at PageID 413-14.) As part of the reduction in force, CORS eliminated thirty-five open positions and four occupied positions, including one family advocate, one administrative assistant, and two drivers—one of whom being Houdeshell. (Doc. No. 18 at PageID 115; Doc. No. 26 at PageID 407.) CORS made the decision to eliminate Houdeshell's position on or about February 21, 2023. (Doc. No. 18 at PageID 116.) The Parties dispute the reason CORS chose the Greenville driver position to be included in the reduction of force. CORS asserts that Houdeshell's position was chosen because CORS determined that eliminating the driver at the Greeneville location would not have a major effect on enrollment. (*Id.* at PageID 115-16.) Houdeshell, on the other hand, claims that CORS chose her position for elimination because she had requested and taken FMLA leave and because of her association with persons with disabilities. (Doc. No. 27 at PageID 560, 567.)

On March 7, 2023, CORS informed Houdeshell that the Greeneville driver position would be eliminated effective at the end of the school year, May 26, 2023, and, in the same meeting, CORS offered to retain Houdeshell in a teaching position. (Doc. No. 18 at PageID 116; Doc. No. 26 at PageID 412-13.) Houdeshell declined the offer for a teaching position at CORS because she had no background in teaching or desire to teach. (Doc. No. 26 at PageID 412-13, 428.)

On April 11, 2023, Houdeshell received an email from Kasey Short, through CORS' messaging system, stating CORS was "seeking additional staff to provide uninterrupted and quality services" to students. (Doc. No. 27-3 at PageID 574.) The message referred those interested in working in areas including transportation to see CORS' career page for openings. (*Id.*) A similar newspaper advertisement also referenced positions in transportation. (Doc. No. 27-4 at PageID 575.) CORS claims that these advertisements were created before the positions to be eliminated in the reduction in force were finalized and that CORS has not hired a driver for the Greeneville location since Houdeshell's termination, nor posted any opening for such a position on its website. (Doc. No. 29 at PageID 582; Doc. No. 22 at PageID 259.)

After receiving the email soliciting applications for transportation positions, Houdeshell filed a charge of employment discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") in May of 2023. (Doc. No. 26 at PageID 471-72.) After receiving a Notice of Right to Sue from the EEOC, Houdeshell filed the current Complaint, on September 28, 2023, seeking relief under six counts of employment discrimination. (Doc. No. 1.) Defendants filed their Motion for Summary Judgment on July 31, 2024 (Doc. No. 18), and Houdeshell filed a Memorandum in Opposition on August 21, 2024 (Doc. No. 27). Defendants filed their reply to Houdeshell's Memorandum in Opposition on September 24, 2024 (Doc. No. 29). The matter is fully briefed and ripe for review and decision.

## II.    LEGAL STANDARDS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought" and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, affidavits or sworn declarations, and admissions on file, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also* Fed. R. Civ. P. 56(a), (c). The burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id.* at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The nonmoving party must "go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In

determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id.*

Regarding Houdeshell's claims brought under Ohio law, the Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co.v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, the Court must apply the substantive law of Ohio "in accordance with the then-controlling decision of the highest court of the State." *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001). To the extent that the highest court in Ohio has not addressed the issue presented, the court must anticipate how Ohio's highest court would rule. *Id.*

### III.   ANALYSIS

The Complaint brings claims under federal law and Ohio state law. (Doc. No. 1) While the analysis for state discrimination claims mirror those of federal discrimination claims, the Court will address the federal and state claims separately.

#### A.   Counts I, II, III, and V – The *McDonnell Douglas* Framework

In Counts I and II, Houdeshell alleges retaliation and interference, respectively, in violation of the FMLA. (Doc. No. 1 at PageID 13.) In Counts III and V, Houdeshell alleges discrimination and retaliation, respectively, in violation of the ADA. (Doc. No. 1 at PageID 14, 16.) Because

Houdeshell does not provide direct evidence of discrimination by CORS, each of her federal claims require application of the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*. *Clemons v. Hillshire Brands Co.*, No. 23-5622, 2024 U.S. App. LEXIS 8856, at *4-5, 2024 WL 3355379, at *2 (6th Cir. Apr. 11, 2024) ("Both FMLA interference and FMLA retaliation claims are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*. . ."); *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011) (ADA associational discrimination claims must be analyzed under the *McDonnell Douglas* analysis); *McDonald v. UAW-GM Ctr. for Hum. Res.*, 738 F. App'x. 848, 855 (6th Cir. 2018) ("ADA retaliation claims are analyzed under the familiar McDonnell-Douglas burden-shifting framework.").

Under this framework, the burden is placed first on the plaintiff to establish a prima facia case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L.Ed. 2d 668, 667 (1973). In cases involving termination of an employee due to a reduction in force, the plaintiff's burden is slightly heightened, requiring the plaintiff to provide additional direct, circumstantial, or statistical evidence which suggests the plaintiff was singled out for termination for impermissible reasons. *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). The plaintiff's duty is heightened because "[a]s long as employers do not act with discriminatory intent, they may eliminate positions in the name of economic necessity or efficiency, even when those positions are held by [persons in a protected class]." *Hightower v. Keystone Auto. Indus.*, 653 F. Supp. 3d 420, 428 (N.D. Ohio 2023) (quoting *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 517 (6th Cir. 1991)) (internal quotations omitted). In *Barnes*, the Sixth Circuit explained a legitimate reduction in force as:

> occur[ing] when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. . . A person is

replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes*, 896 F.2d at 1465.

If the plaintiff meets her burden to establish a prima facia case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory, non-retaliatory reason for its actions. *McDonnell Douglas Corp.*, 411 U.S. at 802. The defendant's burden is one of production not persuasion. *Casagrande v. OhioHealth Corp.*, 666 F. Appx. 491, 500 (6th Cir. 2016) (citing *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 589 (6th Cir. 2009)). If the defendant provides such a reason, the burden shifts back to the plaintiff to establish that the defendant's proffered reason was pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 804. The defendant's reason is pretextual if it has no basis in fact, did not actually motivate the action, or was insufficient to warrant the action. *Robinson v. MGM Grand Detroit, LLC*, 821 F. Appx. 522, 530 (6th Cir. 2020) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 2751-52, 125 L. Ed. 2d 407, 421 (1993)).

The Court applies this analysis to each federal claim. Throughout the analysis, the plaintiff "always bears the burden of producing sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant [] intentionally discriminated against him." *Robinson*, 821 F. App'x. at 530 (quoting *Clark v. Walgreen Co.*, 424 F. App'x. 467, 474 (6th Cir. 2011)) (alterations in original). To avoid summary judgment, the plaintiff must offer sufficient evidence to "create a genuine dispute at each stage of the McDonnell Douglas inquiry." *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007) (quoting *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007)) (internal quotations omitted).

i.      **Prima Facia Case**

a.      **Count I – FMLA Retaliation**

The Court finds that Houdeshell meets her burden of proof to establish a prima facia case for FMLA retaliation. In order for Houdeshell to establish a prima facia case for her FMLA retaliation claim, she must prove: (1) she was engaged in an activity that was protected by the FMLA; (2) CORS knew that Houdeshell was exercising her FMLA rights; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected FMLA activity and adverse employment action. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 897 (6th Cir. 2016). In their Motion, Defendants only challenge the fourth element and assert that Houdeshell cannot show a causal connection between the protected FMLA activity and the adverse employment action. Therefore, the Court only addresses whether the causation element is met.

To show causation, Houdeshell must provide sufficient evidence that could lead the fact finder to draw an inference that the "employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in [the protected] activity . . ." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 543 (6th Cir. 2003). If the Court can draw such an inference from creditable evidence, it will find that the causation element is met. *Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 675 (S.D. Ohio 2005).

Houdeshell presents three pieces of evidence in support of a finding of causation. First, she argues there is sufficient temporal proximity between the time she submitted her FMLA request on February 13, 2023, and when Houdeshell was informed that her position was being eliminated on March 7, 2023. (Doc. No. 27 at PageID 560.)[2] Houdeshell states that because only a few weeks passed between her FMLA request and the adverse employment action there is a plausible inference of causation. (Doc. No. 27 at PageID 560.) Second, Houdeshell argues the employment

---

[2] Houdeshell suggests the adverse employment action occurred on March 7, 2023, when she was informed that her position was being eliminated, but Defendants state the adverse action occurred on February 21, 2023 when the decision was made to terminate her position. (Doc. No. 27 at PageID 560; Doc. No. 18 at PageID 122.)

advertisements that CORS issued, even after Houdeshell was informed that her position was being eliminated, show CORS eliminated her position because she had requested and taken FMLA leave. (*Id.* at PageID 561.) Third, Houdeshell argues that causation exists because her position was terminated while other drivers, who had not taken or requested FMLA leave, retained their positions. (*Id.*)

Defendants argue that there is no temporal proximity in this case because CORS first learned of Houdeshell's FMLA leave no later than January 2022 and the adverse action occurred on February 21, 2023, when CORS made the decision to terminate the Greeneville driver position. (Doc. No. 18 at PageID 123.) However, the Parties do not dispute that Houdeshell had most recently requested FMLA leave on February 13, 2023. (Doc. No. 27-1 at PageID 571.) This request constitutes a new and separate instance of protected activity. Therefore, the time between when CORS learned of Houdeshell's protected activity to the time of the adverse employment action was eight days.

In *DiCarlo v. Potter*, the Sixth Circuit held that there are "certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004). It has been established that even as much time as two to three months between protected activity and an adverse action is sufficient to show causation. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283-84 (6th Cir. 2012). The span of eight days between Houdeshell's protected activity and the adverse action taken against her demonstrates temporal proximity sufficient to prove the causation element. Thus, Houdeshell has met her burden of proof to establish a prima facia case of FMLA retaliation.

**b.** **Count II – FMLA Interference**

The Court finds that Houdeshell fails to meet her burden of proof in establishing a prima facia case for FMLA interference. The FMLA provides that it is forbidden "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title." 29 U.S.C. § 2615(a)(1). For Houdeshell to establish a prima facia case of FMLA interference, she must prove: (1) she was an eligible employee under the FMLA; (2) CORS was an employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intention to take FMLA leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472, 475 (6th Cir. 2019).

In their Motion, Defendants only challenge the fifth element, arguing that Houdeshell was not denied FMLA benefits to which she was entitled. (Doc. No. 18 at PageID 121.) The issue between the Parties is whether an interference claim can be based on termination after an employee received FMLA leave. The Sixth Circuit has settled this dispute before, stating that an FMLA inference claim may arise out of termination of an employee. *See Wysong v. Dow Chem. Co.*, 503 F.3d 441 (6th Cir. 2007).

*Wysong* allowed the fifth element to be restated "as being that the employer has somehow used the leave against her and in an unlawful manner, as provided in either the statute or regulations.'" *Wysong*, 503 F.3d at 447 (quoting *Bradley v. Mary Rutan Hosp.*, 322 F. Supp. 2d 926, 940 (S.D. Ohio 2004)). The Sixth Circuit in *Wysong,* quoting 29 C.F.R. § 825.220(c), explained the "negative-factor analysis" as that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." *Wysong*, 503 F.3d at 447. The negative-factor analysis has been followed by many district courts in ruling on FMLA interference claims in which the employee is alleging termination of his or her

11

employment interfered with his or her right to take FMLA leave. *See e.g. Burnett v. Gallia Cnty.*, No. 2:14-CV-2544, 2016 U.S. Dist. LEXIS 123096, 2016 WL 4750107 (S.D. Ohio Sept. 12, 2016); *see also Allen v. City of Sturgis*, 559 F. Supp. 2d 837 (W.D. Mich. 2008).

In analyzing the fifth element under the negative-factor analysis, the Sixth Circuit determined the plaintiff must show both that the FMLA taken by an employee was used as a negative factor against her and that there was causation between the adverse employment action and the FMLA leave. *Wysong*, 503 F.3d at 447-48.

Likewise, to establish a prima facia case, Houdeshell must present evidence that CORS used her taking of FMLA leave as a negative factor against her in its decision to terminate her position. However, if CORS shows that "'dismissal would have occurred regardless of the employee's request for or taking of FMLA leave,' then the plaintiff fails to satisfy this prong." *Burnett*, 2016 U.S. Dist. LEXIS 123096, at *30, 2016 WL 4750107, at *9 (quoting *Arban v. West Publ'g. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003)).

Here, Houdeshell alleges that she was denied her FMLA rights because CORS eliminated her position after she had been approved for FMLA leave, but before she was able to utilize that leave. (Doc. No. 27 at PageID 563.) Merely terminating an employee who had been approved for FMLA leave does not constitute FMLA interference. Even assuming there is causation due to temporal proximity, Houdeshell has not presented any evidence that Defendants used her FMLA leave as a negative factor against her. Further, CORS has shown that its termination of Houdeshell was due to a reduction of force and it would have eliminated the Greeneville driver position regardless of Houdeshell's FMLA leave. Therefore, while a legal remedy may be sought under interference based upon termination, Houdeshell has not presented enough evidence to establish a prima facia case of FMLA interference.

### c.  <u>Count III - Disability Discrimination in Violation of the ADA</u>

The Court finds that Houdeshell is unable to establish a prima facia case for disability discrimination under the ADA. Houdeshell does not allege that she is a disabled individual, but that she was discriminated against due to her association with a disabled individual. (Doc. No. 1 at. PageID 14.) In order for Houdeshell to establish a prima facia case for associational disability discrimination under the ADA, she must show: (1) she was qualified for the position; (2) she was subject to adverse employment action; (3) she was known to be associated with a disabled person; and, (4) the adverse employment action occurred under circumstances that raise a reasonable inference that the disability of the relative was a determining factor in the decision. *Stansberry*, 651 F.3d at 487. In their Motion, Defendants only dispute the third and fourth elements. (Doc. Nos. 18 at PageID 124.)

Regarding the third element, Defendants state that, while Houdeshell had informed "CORS that two relatives (her mother and daughter) suffered from various medical conditions and needed to be driven to medical facilities for treatment," Defendants did not have any knowledge as to whether the conditions impacted their daily activities in a way which they would be classified as disabled. (Doc. No. 18 at PageID 124.) In her Memorandum in Opposition, Houdeshell does not point to any evidence showing Defendants had knowledge that she was associated with a disabled person. (Doc. No. 27 at PageID 564-67.) Instead of focusing on the issue of knowledge, Houdeshell argues that the Court should define disability broadly and should not focus on whether the definition of disability is met. (Doc. No. 27 at PageID 565.).

Assuming, for Summary Judgment purposes, that Houdeshell's mother and daughter were disabled as defined by the ADA, there remains an issue of Defendants' knowledge. The only evidence Houdeshell presents suggesting Defendants had knowledge of disability is that her

"FMLA requests were discussed at CORS' biweekly staffing meeting . . ." and Defendant "Woryk testified that she recalled that Houdeshell's daughter was ill and had discussions with coworkers regarding her condition." (Doc. No. 27 at PageID 567.) "Simply applying for and using FMLA does not equate to a finding of or knowledge of disability pursuant to the ADA." *Schindewolf v. City of Brighton*, 2015 U.S. Dist. LEXIS 69492, at *12, 2015 WL 3451150, at *4 (E.D. Mich. May 29, 2015). Houdeshell has not alleged that those involved in the decision to terminate her position knew what illness that her daughter or mother suffered from, let alone that such illnesses may be qualified as a disability.

Further, even if CORS knew or should have known that Houdeshell was associated with a disabled person, Houdeshell has not presented any evidence that suggests she was terminated due to her daughter or mother's illnesses. Hence, Houdeshell is unable to establish a prima facia case for disability discrimination under the ADA.

### d.  Count V - Retaliation in violation of the ADA

The Court finds that Houdeshell has not established a prima facia case of ADA retaliation. For Houdeshell to establish a prima facia case for retaliation under the ADA, she must show: (1) she engaged in activity protected by the ADA; (2) the Defendant, CORS, knew of her exercise of protected activity; (3) Defendant, CORS, took adverse employment action against her or subjected her to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the protected activity and the adverse employment action. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). For the purposes of summary judgment Defendants concede that Houdeshell can establish the first three elements but argue that there is no causal connection between the protected activity and the adverse action. (Doc. No. 18 at PageID 127.)

Protected activity under the ADA includes opposing ADA discrimination or participating in any manner in an investigation, proceeding, or hearing under the ADA. *Rorrer*, 743 F.3d at 1046. This encompasses actions such as filing a charge of discrimination and testifying, assisting, or participating in investigations or proceedings related to the ADA. *See Id.* Houdeshell engaged in protected activity when she filed a charge of discrimination with the EEOC in May of 2023. (Doc. No. 26 at PageID 471-72.) The adverse employment action occurred February 21, 2023, months before Houdeshell's May filing with the EEOC. (Doc. No. 18 at PageID 123.) Therefore, there can be no causal connection between the protected activity and the adverse employment action because the adverse action was taken before Houdeshell engaged in the protected activity.

### ii. <u>Legitimate, Non-Discriminatory, Non-Retaliatory Reason</u>

The Court finds that Defendants have presented a legitimate, non-discriminatory, non-retaliatory reason for terminating Houdeshell's employment. On the FMLA retaliation claim, for which Houdeshell has established a prima facia case, the burden shifts to Defendants to establish a legitimate, non-discriminatory, non-retaliatory reason for the action. *McDonnell Douglas Corp.*, 411 U.S. at 802. Defendants state that their reason for the adverse employment action here was a reduction in force, as suggested by OHS. (Doc. No. 18 at PageID 128.) Further, Defendants state that Houdeshell's position was specifically chosen for elimination because "CORS determined that discontinuing the bus service was unlikely to have a significant impact upon enrollment at the Greenville facility, and that the other tasks performed by Ms. Houdeshell could be performed by other employees." (*Id.* at PageID 115.)

The Sixth Circuit has held that eliminating an employee under a reduction in force or a restructuring is a legitimate, non-discriminatory reason for termination. *Madry v. Gilbraltar Nat'l. Corp.*, 526 F. App'x. 593, 597 (6th Cir. 2013) ("We have previously found that the restructuring of

a business was a legitimate, nondiscriminatory reason for terminating an employee who had incidentally taken FMLA leave."). Therefore, Defendants have presented sufficient evidence of a legitimate, non-discriminatory, non-retaliatory business reason and thus meet their burden.

### iii.  **Pretext**:

Once the defendant gives a legitimate, non-discriminatory, non-retaliatory reason for the adverse action, the burden shifts back to the plaintiff to establish that the proffered reason is pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 804. At all times:

> The plaintiff retains the ultimate burden of persuasion in an employment discrimination case. If the defendant employer offers evidence of a legitimate non-discriminatory reason for a plaintiff's firing, plaintiff, in order to withstand a motion for summary judgment, must "demonstrate that the proffered reason was not the true reason for the employment decision. . ."

*Barnhart v. Pickrel, Schaeffer, Ebeling Co., L.P.A.*, 12 F.3d 1382, 1390 (6th Cir. 1993) (quoting *Texas Dep't. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207, 217 (1981)). "Plaintiff must present additional evidence rebutting Defendants' proposed reasons for terminating her to survive summary judgment." *Keith v. Siromed Physicians Servs., Inc.*, No. 20-cv-12551, 2022 U.S. Dist. LEXIS 18528, at *16, 2022 WL 303362, at *6 (E.D. Mich. Feb. 1, 2022) (citing *Hodnett v. Chardam Gear Co., Inc.*, 749 F. App'x. 390, 394 (6th Cir. 2018); *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008)). Houdeshell meets this burden if she provides sufficient evidence that Defendants' reason for the adverse employment action "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003).

Houdeshell argues that the legitimate reason given by Defendants did not actually motivate Defendants' decision to terminate her position. For support, Houdeshell raises the fact that CORS continued to advertise for driver positions after they informed her that her position was being

eliminated. (Doc. No. 27 at PageID 562.) Houdeshell argues that CORS' decision to terminate her position was actually motivated by her use of FMLA leave because CORS advertised to hire a driver who could provide "uninterrupted" transportation services. (*Id.*) If a reasonable jury could conclude that Defendants' reason was pretextual, Defendants' Motion should be denied as to Houdeshell's FMLA retaliation claim.

The Sixth Circuit decision in *Butler v. Ohio Power Co.*, while not directly on point, is instructive. In *Butler v. Ohio Power Co.*, the court found the plaintiff failed to show that the defendant's reason for her termination, a reduction in force, was pretext for intentional discrimination based on her age. *Butler v. Ohio Power Co.*, No. 95–3547, 1996 U.S. App. LEXIS 19153, at *21, 1996 WL 400179, at *6 (6th Cir. 1996). The plaintiff argued that the reduction in force was pretextual because the defendant had hired 76 new employees, temporary employees, and had "advertised for new jobs in its telephone service center." *Id.* at *19. The court rejected this argument because the plaintiff "fail[ed] to examine the types of employees hired or the reasons that they were hired." *Id.* at *21. Further, the court found that "[t]he advertisement, defendant's 76 'new hires,' and the use of contract employees are not inconsistent with the restructuring that led to plaintiff's termination. . ." *Id.* Similarly, Houdeshell presents no evidence to suggest that a subsequent driver for the Greeneville location was ever hired or even solicited. Houdeshell only presents evidence that an advertisement was released by CORS which stated those interested in transportation positions should go to the company's career page. The advertisement alone is not enough to create pretext or a question of fact as to pretext.

Houdeshell also argues for a finding of pretext because she "service[d] more students in her area than other areas but she was nevertheless selected for termination." (Doc. No. 27 at PageID 562.) The fact that Houdeshell serviced more students than other areas is not, on its own,

inconsistent with the reduction in force, or Defendants' claim that eliminating the transportation at the Greeneville location would not significantly affect enrollment. Houdeshell has not presented any evidence suggesting that there was not, in fact, a reduction of force or that eliminating the Greeneville driver position would affect enrollment.

In addition, it is undisputed that CORS offered to retain and retrain Houdeshell in a teaching position. (Doc. No. 26 at PageID 412.) An employer's failure to retain or transfer an employee during a reduction of force could be evidence of pretext. *See e.g. Brownlow v. Edgecomb Metals Co.*, 867 F.2d 960, 962-63 (6th Cir. 1987). However, failure to do so does not necessarily constitute pretext. *See Bender v. Hecht's Dep't. Stores*, 455 F.3d 612 (6th Cir. 2006). It follows that where the employer *did* offer to retain or transfer the employee, the employer's offer is strong evidence against pretext. Thus, the Court finds Houdeshell has not shown Defendants' reason is pretextual.

**B. Count IV and VI – Discrimination and Retaliation under O.R.C. Chapter 4112**

In Counts IV and VI of the Complaint, Houdeshell claims that Defendants discriminated against her in violation of Ohio Revised Code Chapter 4112. (Doc. No. 1 at PageID 15-17.) "[O.]R.C. 4112.02(A) makes it an unlawful discriminatory practice for any employer, because of an employee's disability, to discharge the employee without just cause. In order to establish a prima facie case of disability discrimination, the person seeking relief must demonstrate that: (1) she was disabled, (2) an adverse employment action was taken by an employer, at least in part, because the individual was disabled, and (3) the person, though disabled, can safely and substantially perform the essential functions of the job in question." *Ressler v. AG*, 2015-Ohio-777, ¶16 (Ohio Ct. App. 2015).

Defendants assert that O.R.C. Chapter 4112 does not recognize associational discrimination claims. (Doc. No. 18 PageID 20.) Defendants cite to *Smith v. Hinkle Mfg.*, 36 F. App'x. 825, 830-31 (6th Cir. 2002), and *Hollobaugh v. Pohl Transp. Inc.*, No. 3:20-cv-495, 2022 U.S. Dist. LEXIS 225683, 2022 WL 17669921 (S.D. Ohio Dec. 14, 2022), to support this assertion. (Doc. No. 18 at PageID 20.) However, these cases conflict with holdings by Ohio courts interpreting Chapter 4112 as well as with holdings by courts in this circuit. The court in *Edizer v. Muskingum Univ.,* No. 2:11-CV-799, 2012 U.S. Dist. LEXIS 140010, at *18, 2012 WL 4499030, at *7 (S.D. Ohio Sept. 28, 2012), addressed the same arguments brought by CORS in this case and observed that "[w]hile the Sixth Circuit has said in dicta that Ohio Revised Code § 4112.02 does not recognize a claim for associational discrimination, *see Smith v. Hinkle Manufacturing Inc. . . .*, Ohio courts confronting the issue directly have held to the contrary." *Edizer*, 2012 U.S. Dist. LEXIS 140010, at *18. The Sixth Circuit affirmed that O.R.C. Chapter 4112 recognizes associational discrimination claims in *Arnold v. City of Columbus*. 515 F. App'x. 524, 529 (6th Cir. 2013) ("Section 4112.02 of the [Ohio Revised Code] similarly prohibits discrimination based on association.").

While the issue of associational discrimination under O.R.C. Chapter 4112 has yet to be addressed by the Supreme Court of Ohio, there are several state appellate courts which have recognized associational discrimination claims under O.R.C. Chapter 4112. *See e.g. Cole v. Seafare Enters.*, No. C-950157, 1996 Ohio App. LEXIS 440, at *7 (Ohio Ct. App. 1996) (applying the Supreme Court of Ohio's holding that discrimination in public accommodations based on association with a person of a certain race or color constitutes discrimination, to the employment context); *Storer v. Nat'l. Coop. Bank*, 2024-Ohio-1676, ¶17 (Ohio Ct. App. 2024) (noting that Ohio recognizes associational discrimination claims but finding the plaintiff's claim fails due to failure

to raise the claim in her complaint). Therefore, the Court finds that Ohio does recognize associational discrimination claims under O.R.C. Chapter 4112.

The Supreme Court of Ohio has held that both federal and Ohio disability discrimination claims follow the same analysis. *Hartman v. Ohio DOT*, 2016-Ohio-5208, ¶16 (Ohio Ct. App. 2016) (citing *Little Forest Med. Ctr. v. Ohio Civ. Rights Comm'n.*, 61 Ohio St.3d 607, 609-10, 575 N.E.2d 1164 (Ohio 1991); *see also Martin v. Barnesville Exempted Vill. Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934, fn.2 (6th Cir. 2000)). Similar to the *McDonnell Douglas* analysis applied above, to establish an Ohio claim for discrimination, Houdeshell must first establish a prima facia case of discrimination. *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, ¶14, 879 N.E.2d 174, 180 (Ohio 2007). If Houdeshell establishes a prima facia case for discrimination, the burden shifts to the Defendants to give a legitimate, non-discriminatory reason for her discharge. *Id.* If such a reason is given, Houdeshell then has the burden to show the reason is not the true reason for her discharge. *Id.*

The Court now turns to the merits of Houdeshell's claims under O.R.C. Chapter 4112 of discrimination and retaliation.

> A prima facie case of discriminatory discharge requires a plaintiff to show (1) he is disabled, (2) he was otherwise qualified for the position, with or without reasonable accommodation, (3) he suffered an adverse action, (4) the employer knew or had reason to know of his disability, and (5) he was replaced, or the job remained open.

*Hartman*, 2016-Ohio-5208 at ¶18. Alternatively, the elements have been stated as eliminating the fourth and fifth elements and restating the third element as the plaintiff "suffered an adverse employment action because of his disability." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014).

Establishing a retaliation claim under Ohio law, requires the plaintiff to establish "(1) she engaged in a protected activity, (2) the defending party was aware that the claimant had engaged

in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action." *Greer-Burger*, 116 Ohio St. 3d at 327. These elements mirror the elements of an ADA retaliation claim as discussed above.

In Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, there is no mention or argument on the Ohio claims, Counts IV and VI. (Doc. No. 27.) Houdeshell has not presented any evidence to the Court supporting these claims. In any event, Houdeshell cannot establish a prima facia case for retaliation under O.R.C. Chapter 4112, because, like her ADA retaliation claim, the protected activity took place after the adverse employment action. As for the associational discrimination claim, even assuming Houdeshell was able to establish a prima facia case, as discussed above, she is unable to show that Defendants' reason for her termination of a reduction in force is not the true reason for her discharge. Therefore, Houdeshell's Ohio claims fail.

## IV.    Conclusion

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. No. 18).

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, November 18, 2024.

s/Thomas M. Rose

_____
                   THOMAS M. ROSE
                   UNITED STATES DISTRICT JUDGE